IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

L. ANNETTE WARNER,           )
                             )
       Plaintiff,            )
                             )
vs.                          )    Case No. 13-cv-277-JED-TLW
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of Social Security,  )
                             )
       Defendant.            )

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff L. Annette Warner seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **REVERSED and REMANDED**.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**BACKGROUND**

Plaintiff, then a 49-year old female, applied for Title II and Title XVI benefits on October 14, 2010, alleging a disability onset date of October 5, 2010. (R. 129-35, 136-42). Plaintiff claimed that she was unable to work due to a number of issues, including neck injuries, migraines, fibromyalgia, degenerative disc disease, arthritis, and bipolar disorder. (R. 166). Plaintiff's claim for benefits was denied initially on February 28, 2011, and on reconsideration on March 31, 2011. (R. 59-64, 67-75, 79-84). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on January 18, 2012. (R. 29-58). The ALJ issued a decision on March 2, 2012, denying benefits and finding plaintiff not disabled because she was able to perform her past relevant work. (R. 15-28). The Appeals Council denied review, and plaintiff appealed. (R. 1-6; Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff was insured through December 31, 2014. (R. 20). Plaintiff had not engaged in substantial activity since October 5, 2010, her alleged disability onset date. Id. The ALJ found that plaintiff had the severe impairment of "degenerative disc disease of the lumbar spine with bilateral lower extremity radiculopathy." Id.

The ALJ also found that plaintiff had three medically determinable mental impairments: bipolar disorder, panic disorder, and personality disorder with histrionic personality traits. (R. 21). However, the ALJ found these impairments to be nonsevere. Id. In making this finding, the ALJ reviewed the consultative mental status exam performed by Dr. Dennis Rawlings in

December 2010. (R. 21). The ALJ appears to have accepted Dr. Rawlings' diagnoses, but he rejected Dr. Rawlings' GAF score of 50, which indicates signs of "'serious' functional deficits." (R. 21-22). Using the "paragraph B" criteria, the ALJ determined that plaintiff had mild limitations in the areas of activities of daily living; social functioning; and concentration, persistence, and pace. (R. 22-23). Plaintiff had no episodes of decompensation. (R. 23). The ALJ noted that plaintiff received limited mental health treatment in the form of medication from her primary care physician and was doing well on the medication. Id. Plaintiff had only made one visit to a mental health facility for treatment, in November 2011. Id. The treatment note from that visit stated only that plaintiff was "Encouraged to maintain sobriety" and to follow up in four weeks. Id.

The ALJ reviewed the medical evidence and plaintiff's testimony. (R. 24-27). Plaintiff testified that she suffered "chronic pain in her neck, low back, legs, feet, arms, and hands" and had undergone five neck surgeries. (R. 24). She experienced daily headaches and migraines two to three times per week. Id. She also testified to having arthritis, bilateral shoulder pain, and diabetes with neuropathy. (R. 24-25). Plaintiff stated that she experienced mood swings and unexplained anger and suffered from bipolar disorder, depression, and anxiety. (R. 25). Plaintiff described "quite normal activities of daily living," including household chores, attending church, and visiting family. Id.

The medical records revealed that plaintiff underwent five neck surgeries. Id. In September 2009, plaintiff complained of pain to Dr. Ronald Woolsey. Id. Dr. Woolsey opined that there was no physical cause for plaintiff's pain other than a lack of rehabilitative therapy following surgery. Id. Plaintiff complained again of pain at a later date. Id. Recent MRI scans

showed only mild disk bulges at C3-C4. (R. 25). Dr. Woolsey recommended that plaintiff take "analgesics," as they appeared to be improving her pain. Id.

In July 2010, plaintiff complained of neck pain to another treating physician, Dr. Ivan Thomas. Id. At that time, plaintiff was taking one Darvocet per day for pain. Id. She complained of increased pain in September 2010 and asked to see a pain specialist. Id. However, a physical examination showed only mild tenderness and no limitations in range of motion. Id.

Also in September 2010, plaintiff sought emergency treatment for back pain. Id. She was diagnosed with "lumbar strain with radiculopathy and cervical strain." Id. She was given conservative treatment and discharged. Id. The following month, plaintiff was in a minor car accident and sought treatment with Dr. Thomas. Id. At that time, she received a steroid injection in her lumbar spine. (R. 25-26). Plaintiff had recently lost her job and told Dr. Thomas that she wanted to return to work. Id.

In March 2011, plaintiff "underwent lumbar facet medial branch radiofrequency thermal coagulation lesioning." (R. 26). At a follow-up appointment, plaintiff was able to move from sitting to standing with no limitations, was walking without assistive devices, and had no new motor or sensory deficits. Id.

Subsequent appointments showed no real complaints of pain, and in July 2011, plaintiff stated that the lumbar ablation from March 2011 had reduced her low back pain significantly. Id. She had new complaints of bilateral hip pain radiating into her knees, but she was taking methadone and Norco for pain. Id. In October 2011, plaintiff had a rheumatology consultation. Id. That examination revealed good range of motion and full strength but eight positive tender points for fibromyalgia. Id. Plaintiff had a second lumbar ablation in November 2011. Id. In a

December 2011 follow-up appointment, she stated that Cymbalta, methadone, and Norco "significantly helped her pain." (R. 26).

Based on this medical evidence, the ALJ concluded that, despite her diagnoses, plaintiff had no serious limitations. (R. 26-27). The ALJ determined that plaintiff retained the residual functional capacity to perform light work with no limitations. (R. 23). The ALJ found that plaintiff's mental impairments caused no limitations and that plaintiff's pain would not prevent her from remaining "attentive and responsive in a work setting." Id. Plaintiff's residual functional capacity permitted her to return to her past relevant work as a receptionist, medical coder, and data entry clerk; therefore, the ALJ found plaintiff not disabled. (R. 27-28).

## ANALYSIS

Plaintiff raises two issues on appeal: (1) that the ALJ failed to properly develop the record regarding plaintiff's mental impairments; and (2) that the ALJ failed to conduct a proper credibility analysis. Because the facts of plaintiff's case are not in dispute, additional discussion of plaintiff's medical records and the administrative hearing is unnecessary, except as set forth in the analysis below.

**<u>Developing the Record on Plaintiff's Mental Impairments</u>**

Plaintiff argues that the ALJ erred in failing to develop the record with respect to her mental impairments. (Dkt. 20). Plaintiff contends that the ALJ should have ordered further evaluation of plaintiff's mental impairments based on Dr. Rawlings' recommendation that plaintiff undergo further testing. Id. Plaintiff also cites to a letter from her attorney, written immediately after the ALJ hearing, requesting an additional consultative examination. Id. Plaintiff argues that the failure to order additional testing was not harmless error because the ALJ

made the determination, without sufficient evidence, that plaintiff's mental impairments were nonsevere. (Dkt. 20).

The Commissioner contends that the ALJ has broad discretion to order consultative examinations. (Dkt. 21). The Commissioner argues that the ALJ thoroughly reviewed the evidence of plaintiff's mental impairments, including Dr. Rawlings' consultative examination report, and concluded that her mental impairments were nonsevere. Id. The Commissioner further argues that the ALJ's decision is supported by the report of a nonexamining agency physician who reviewed Dr. Rawlings' report. Id.

The ALJ does have "broad latitude in ordering consultative examinations." Hawkins v. Chater, 113 F.2d 1162, 1166 (10th Cir. 1997). Nonetheless, Hawkins, citing the applicable regulations and other case law, holds that, despite the ALJ's discretion, a consultative examination must be ordered in three instances:

"where there is a direct conflict in the medical evidence requiring resolution;"

"where the medical evidence in the record is inconclusive;" or

"where additional tests are required to explain a diagnosis already contained in the record."

Id. (citations omitted). Hawkins notes that "[t]he difficult cases are those where there is some evidence in the record or some allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling." Id. at 1167. In that situation, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." Id.

In his decision, the ALJ discusses Dr. Rawlings' opinion only as part of the step two/step three assessment of the severity of plaintiff's mental impairments. (R. 21-22). The ALJ does not specify the weight he assigns to Dr. Rawlings' opinion. He appears to accept Dr. Rawlings'

diagnoses, as evidenced by their inclusion in the discussion of plaintiff's mental impairments. (R. 21). The ALJ also summarizes and accepts the results of Dr. Rawlings' tests and examinations, stating that plaintiff had intact memory, no difficulty with "mental control or concentration," and logical but racing thoughts. Id. However, the ALJ rejects Dr. Rawlings' GAF score and goes into great detail about the limited value of GAF scores. (R. 21-22). The ALJ then addresses the "paragraph B" criteria based, in part on Dr. Rawlings' report, and finds that plaintiff has only mild limitations, pointing to a nonsevere mental impairment. (R. 22-23). The ALJ never mentions Dr. Rawlings' recommendation that plaintiff undergo further mental testing.

The Tenth Circuit does not have a rule requiring an ALJ to rule on a request for a consultative examination. See Harlan v. Astrue, 510 Fed.Appx. 708, 712 (10th Cir. 2013) (unpublished)[1]. Rather, the decision to order a consultative examination depends on the facts of the case. See id. Accordingly, "the appropriate inquiry continues to be whether the ALJ met his responsibility to ensure the record was sufficiently developed to decide the issues presented at the hearing." Id. In Harlan, however, the claimant did not argue that the ALJ failed to develop the record. See id. at 713.

Shortly after deciding Harlan, the Tenth Circuit addressed the ALJ's responsibility to rule on a request for consultative examination when the claimant *does* argue failure to develop the record. See Lundgren v. Colvin, 512 Fed.Appx. 875, 878-79 (10th Cir. 2013). In Lundgren, the Tenth Circuit determined that the ALJ was not required to explain his reasons for not ordering a consultative examination because he addressed the issue at the hearing, stating that he would notify the parties if additional information was necessary. See id. at 879. This statement, coupled

---

[1] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

with the ALJ's written decision that considered all of the evidence, was enough to satisfy the Tenth Circuit that the ALJ "met his responsibility to ensure that the record was sufficiently developed to decide the issues presented at the hearing." Id. (citations omitted).

Both Harlan and Lundgren discuss two unpublished district court cases from the Northern District of Oklahoma as part of their analysis. See Harlan, 510 Fed.Appx. at 711-12; Lundgren, 512 Fed.Appx. at 878-79. Those district court cases were remanded for the ALJ to make a determination on the need for consultative examinations. However, in both cases, the Tenth Circuit determined that there was an issue, other than the general question of ruling on the need for additional evidence, that required remand. In Taylor v. Astrue, No. 09-cv-129-CVE-FHM, 2010 WL 3277425 (N.D.Okla. August 17, 2010) (unpublished), the court remanded the case because the evidence in the record was sparse and the claimant's date last insured was possibly extended, leaving the ALJ with no evidence to consider for part of the claimant's insured period. In Fortna v. Astrue, No. 05-cv-587-SAJ (N.D. Okla. May 1, 2007), the court remanded the question of ordering a consultative examination because the evidence was stale and because the previous testing was not in the record.

In this case, the question of whether the ALJ should have ordered the additional testing is not just a legal question regarding the ALJ's general duty to rule on a request for a consultative examination. Rather, it is specifically related to the ALJ's contradictory treatment of Dr. Rawlings' opinion. The ALJ appears to adopt Dr. Rawlings' opinion by accepting the diagnoses and the examination results and observations. (R. 21). The only portion of Dr. Rawlings' opinion that the ALJ rejects is the GAF score, but the ALJ never discusses plaintiff's GAF score specifically, opting instead for a general discussion regarding the unreliability of such scores. (R. 21-23).

8

An ALJ "must discuss the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). In this case, plaintiff received mental health care through her general practitioner, not through a mental health specialist; therefore, Dr. Rawlings' opinion is the only substantive diagnostic evidence of plaintiff's mental impairments.[2] Accordingly, Dr. Rawlings' opinion is uncontroverted and significantly probative evidence.

The ALJ relied on Dr. Rawlings' opinion, at least in part, as evidenced by his acceptance of the diagnoses of bipolar disorder, panic disorder, and personality disorder with histrionic personality traits. (R. 21). However, he rejected the recommendation for additional testing, either intentionally or by omission. This piecemeal acceptance of Dr. Rawlings' opinion, without further explanation, is improper. See Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007). "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Id. (citations omitted). The Tenth Circuit held that while an "ALJ is entitled to resolve any conflicts in the record," he must provide an explanation for rejecting some parts of an opinion "while appearing to adopt others." Id. at 1208.

Accordingly, if the ALJ had a reason for accepting the diagnoses but failing to order the recommended testing, he should have explained that reasoning in his decision. Because he did not and because Dr. Rawlings' recommendation indicates that "additional tests are required to

---

[2] Plaintiff's records reflect that her general practitioner provided her with medication for depression for a number of years. (R. 320-469). In late 2011, her physician died, and her new general practitioner referred her to a mental health clinic because he was uncomfortable prescribing psychiatric medication. (R. 531-34).

Dr. Rawlings' opinion is uncontradicted by the state agency psychologist, who adopted the diagnoses in the MRFC form. (R. 479-92). While the state agency psychologist found that plaintiff had minimal functional limitations resulting from her mental impairments, she adopted the diagnoses. (R. 479-92).

explain a diagnosis already contained in the record," the undersigned recommends that the case be remanded for the ALJ to explain the reasons for failing to order the additional tests.

**<u>Credibility</u>**

Plaintiff argues that the ALJ relied on boilerplate language and made no specific findings regarding plaintiff's credibility. (Dkt. 20). Plaintiff also argues that the ALJ failed to consider evidence that supported plaintiff's credibility, such as the evidence of plaintiff's continued efforts to seek treatment, and failed to properly consider the nature of plaintiff's fibromyalgia diagnosis. <u>Id.</u> The Commissioner contends that the ALJ considered a number of the required credibility factors, including the conservative nature of plaintiff's treatment, the objective medical evidence, and plaintiff's activities of daily living. (Dkt. 21).

The ALJ made boilerplate statements regarding plaintiff's credibility, stating that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 25). The only other statements in the ALJ's decision that could be considered part of the credibility findings relate to the ALJ's assessment of plaintiff's pain. (R. 27). In finding that plaintiff's pain was not severe enough to prevent her from performing light work, the ALJ stated that the "objective evidence indicates that, contrary to the claimant's reports of disabling pain, she has exhibited relatively moderate symptoms." <u>Id.</u> The ALJ further noted that plaintiff did not exhibit signs associated with disabling pain, such as weight loss, muscle atrophy, use of assistive devices, or prolonged bed rest. <u>Id.</u>

The use of boilerplate language alone is insufficient to constitute a proper credibility analysis because if "fails to inform [the Court] in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."

Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004) (citing Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001) and Angel v. Barnhart, 329 F.3d 1208, 1213 (10th Cir. 2003), with other citations omitted). However, the use of boilerplate language is not reversible error when the ALJ also cites specific evidence in support of his credibility findings. See Hardman, 362 F.3d at 679.

For instance, the Tenth Circuit has recently rejected the "boilerplate argument" when the ALJ's decision links the credibility finding to specific evidence elsewhere in the decision. See Keyes-Zachary, 695 F.3d at 1169-71. In Keyes-Zachary, the ALJ found the claimant not credible and recited boilerplate language regarding activities of daily living. See id. The ALJ also referenced "other factors discussed in this decision" and "other reasons." See id. However, the ALJ did not cite those "other reasons" or "other factors." See id. In rejecting the claimant's boilerplate argument, the Tenth Circuit adopted a pragmatic approach. See id. The Tenth Circuit noted that the ALJ cited several instances in which the claimant's testimony was contradicted by the medical evidence. See id. at 1169-70. The ALJ also noted several medical records that indicated only slight limitations. See id. at 1170-71. Relying on these references, the Tenth Circuit concluded that the ALJ's "approach performed the essential function of a credibility analysis by indicating to what extent he credited what she said when determining the limiting effect of her symptoms." Id. at 1170.

In this case, the ALJ did note that several of plaintiff's physical examinations showed no significant limitation. (R. 25, 26). He also noted plaintiff's report that her pain medication was helpful in controlling her pain. (R. 26). The ALJ further commented that plaintiff's activities of daily living, another consideration in the credibility analysis, were "quite normal." (R. 25). These

statements "perform[] the essential function of a credibility analysis." See Keyes-Zachary, 695 F.3d at 1170. Accordingly, the undersigned recommends a finding of no error on this issue.

## CONCLUSION

For the reasons set forth above, the undersigned RECOMMENDS that the Commissioner's decision in this case be **REVERSED** and **REMANDED** for further proceedings consistent with this report and recommendation. On remand, the ALJ should explain his reasons for accepting parts of Dr. Rawlings' opinion but rejecting the recommendation for additional testing. An analysis similar to the ALJ's thorough explanation for rejecting the GAF score in Dr. Rawlings' opinion would be instructive for the Court if additional judicial review is required.

## OBJECTION

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by September 2, 2014.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. See also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir.

1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 19th day of August, 2014.

_____
T. Lane Wilson
United States Magistrate Judge